IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Desi Lowe, ) | |
| ) | Civil Action No. 6:05-1874-RBH-WMC |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Rentway, Inc., ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter is before the court on the defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. The plaintiff alleges that the defendant, his former employer, discriminated against him because of his race by demoting him. He alleges causes of action for disparate treatment and disparate impact race discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, and Title 42, United States Code, Section 1981.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

**FACTS PRESENTED**

The defendant is in the business of renting furniture, appliances, and home electronics to customers by means of self-renewing weekly or monthly leases (def. reply, ex. 1, Ron Semelsberger aff. ¶ 2). The defendant hired the plaintiff, who is a black male, on August 8, 1999, as a store manager in the Atlanta, Georgia, area (pl. dep. 26-27; def. m.s.j., ex. B). In 2000, the defendant promoted the plaintiff to the position of training manager (pl. dep. 29). As training manager, the plaintiff was responsible for training area

employees on the policies and procedures of the defendant, including its anti-discrimination policies (pl. dep. 30-31). On October 28, 2001, the defendant promoted the plaintiff to the position of regional manager for Region 705 (pl. dep. 32; def. m.s.j., ex. B). A regional manager is responsible for the operations, sales, and financial performance of several stores in a geographical area (pl. dep. 33-34). Region 705 contained six stores in the Atlanta area (pl. dep. 32-33). Less than one year later, the defendant sold several stores in Region 705 to a competitor (pl. dep. 35). As a result of the sale, the plaintiff's regional manager position was eliminated, and the defendant offered the plaintiff the position of store manager again, which he accepted (pl. dep. 35-36). After being a store manager again for about six months, the defendant promoted the plaintiff to a regional manager position for a second time (pl. dep. 38). This regional manager position was responsible for Region 960, which contained nine stores in western South Carolina and one store in eastern Georgia (comp. ¶ 11; pl. dep. 39, 41). The promotion was effective on March 2, 2003 (pl. dep. 41; def. m.s.j., ex. B). The stores in Region 960 had performance problems that the plaintiff was responsible for addressing (pl. dep. 44). The plaintiff expected that he would need 18 to 24 months to resolve all of the issues in Region 960 (pl. dep. 45).

At the time of his promotion to regional manager for Region 960, the plaintiff's supervisor was divisional vice president Myron Ball (pl. dep. 48). In July 2003, Mr. Ball was replaced by Michael Bennett, who became the new divisional vice president (comp. ¶ 13; pl. dep. 48-49). A few months later, Mr. Bennett reorganized the region and moved two of the plaintiff's stores out of Region 960 (pl. dep. 49-50). Mr. Bennett held regular meetings with all of his regional managers, including the plaintiff, and provided the regional managers with guidelines and instructions as to how to improve performance (pl. dep. 130, ex. 3-4).

At the end of 2003, Region 960 still ranked among the very last of the 97 regions within the defendant (pl. dep. 118, 123, ex. 1; def. m.s.j. ex. B). The performance of Region 960 did not improve in January or February 2004, and the plaintiff authored several e-mails to his store managers noting that "[w]e are getting killed by payouts, and

2

all some of you are doing is sitting by, and doing nothing" (February 13, 2004), and "[n]ow you see what we have to make up. . . . We will overcome these numbers" (February 20, 2004) (pl. dep., ex. 1).

On February 24, 2004, almost one year after his promotion to regional manager for Region 960, Mr. Bennett decided to demote the plaintiff (comp. ¶ 11; def. m.s.j., ex. B).  Mr. Bennett explained to the plaintiff that the demotion was because of the plaintiff's store performance numbers and that a different direction for those stores was needed (pl. dep. 63, ex. 10).  Mr. Bennett also showed the plaintiff a report demonstrating that Region 960 remained near the bottom of all regions (def. m.s.j., ex. B).  Following his demotion, the plaintiff returned to a store manager position.  He resigned from employment with the defendant effective June 4, 2004 (pl. dep., ex. 11), and was replaced by Arthur Deal, a person outside the protected class.

The plaintiff testified in his deposition that he called the defendant's InTouch Employee Hotline at some point before he left employment with the defendant, and he spoke with a representative.  He does not remember what he told the person or whether he said anything about racial discrimination.  He further testified that he did not know when he made the call or whether it was made before or after he was demoted or submitted his resignation. He testified that he did not remember anything about the conversation (pl. dep. 103-104).  When the plaintiff resigned, he stated on the resignation form that he was leaving because of "unfair demotion and mental stress.  Lack of support from D.V.P.  Also racial discrimination" (pl. resp. m.s.j., ex. C).  The plaintiff testified that while he worked for the defendant he did not recall ever complaining to anyone about racial discrimination (pl. dep. 100).

## APPLICABLE LAW

Federal Rule of Civil Procedure 56(c) states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law.  As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257.  In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings.  Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.  Furthermore, Rule 56(e) provides in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e). Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must produce existence of every element essential to his action that he bears the burden of adducing at a trial on the merits.

## ANALYSIS

A Section 1981 claim is substantively analyzed in the same manner as a Title VII race discrimination claim.[1] *White v. BFI Waste Serv.*, 375 F.3d 288, 295 (4th Cir. 2004). The plaintiff has no direct evidence of discrimination (pl. dep. 97-98). Under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-804 (1973), the allocation of proof is as follows: (1) the plaintiff-employee must first establish a *prima facie* case of discrimination; (2) if the plaintiff succeeds in proving the *prima facie* case, the burden shifts to the defendant-employer to articulate a legitimate non-discriminatory reason for its actions; and (3) if the defendant carries this burden, the plaintiff must then establish by a preponderance of the evidence that the reason articulated by the employer is a pretext to mask unlawful discrimination. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981) (quoting *McDonnell Douglas,* 411 U.S. at 802-03).

To establish a *prima facie* case of disparate treatment discrimination, the plaintiff must prove that (1) he is a member of a protected class, (2) he suffered an adverse employment action, (2) he was performing his job duties at a level that met his employer's

---

[1] The plaintiff first argues that the Title VII claims are untimely. As the court finds that the claims under both Title VII and Section 1981 fail on the merits as set forth below, the timeliness of the Title VII claims will not be addressed in this Report.

legitimate expectations at the time of the adverse employment action, and (4) his position remained open or was filled by a similarly qualified applicant outside the protected class. *See Baqir v. Principi*, 434 F.3d 733, 742 (4th Cir. 2006) (citing *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004) (en banc)).  The defendant argues that the plaintiff cannot establish the third and fourth elements.  However, for purposes of this motion, the court will assume that the plaintiff can establish a *prima facie* case of disparate treatment discrimination because of his race.

The defendant has articulated a legitimate nondiscriminatory reason for demoting the plaintiff.  Mr. Bennett explained to the plaintiff that the reason for the demotion was the plaintiff's continuing inability to show progress in improving the performance of Region 960 (pl. dep. 63-64, ex. 10; def. m.s.j., ex. B).  "Job performance and relative employee qualifications are widely recognized as valid, non-discriminatory bases for any adverse employment decision." *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 960 (4th Cir. 1996) (citations omitted).

The plaintiff must then establish by a preponderance of the evidence that the reason articulated by the defendant is a pretext to mask unlawful discrimination.  In *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000), the Supreme Court reiterated that evidence of pretext, combined with the plaintiff's *prima facie* case, does not compel judgment for the plaintiff, because "[i]t is not enough ... to *dis*believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination." *Id.* at 147 (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 519) (emphasis in original).  However, the Court also stated that, under the appropriate circumstances, "a plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Id*.  It is the plaintiff's burden to create an inference that the defendant's proffered reason is a pretext for intentional discrimination. *See id.* at 147-48.  Pretext analysis does not convert Title VII into a vehicle for challenging unfair – but nondiscriminatory – employment

6

decisions. *Holder v. City of Raleigh*, 867 F.2d 823, 828 (4th Cir. 1989). Conclusory allegations, without more, are insufficient to preclude the granting of the defendant's summary judgment motion. *Ross*, 759 F.2d at 365.

Mr. Bennett stated that Region 960 ranked 96 out of the 97 regions in the company for 2003, the plaintiff was unable to train and develop his employees, and he was unable to control credit issues (def. m.s.j., ex. B). As noted by the defendant, the plaintiff testified that he had no evidence that Mr. Bennett was motivated by race discrimination in deciding to demote him (pl. dep. 71-74, 97-98). Further, the plaintiff testified in his deposition that he had "no opinion" as to whether Mr. Bennett's decision to remove two stores from Region 960 was motivated by racial discrimination (pl. dep. 52-53). However, the plaintiff argues in response to the motion for summary judgment that the evidence shows that his performance was "as good, if not far superior, to other regional managers, yet the decision was made to take two stores from the Plaintiff's region and to ultimately demote him which can only have been motivated by race" (pl. resp. m.s.j. 2).

The defendant argues that the reports submitted by the plaintiff in support of his argument that his performance was "as good, if not far superior" to that of his co-workers are limited to three of ten areas in which the defendant evaluates its regional managers, and thus they do not represent an overall assessment of the plaintiff's performance (Semelsberger aff. ¶ 4). Ron Semelsberger, the Senior Vice President of North Operations for the defendant, testified in his affidavit that the reports submitted by the plaintiff track only three areas of performance: gross weekly rental revenue ("GWRR"), accounts on receipt ("AOR"), and number of customers. However, the defendant tracks ten areas of performance when assessing its regional managers. The additional seven areas are: actual card close percentage, actual float percentage, actual card open percentage, actual discount/deferral percentage, actual loss percentage, actual performance percentage, and actual total revenue. Mr. Semelsberger testified that the Power Ranking Reports from March 2003 through May 2004 demonstrate that when all ten performance

7

areas were considered the plaintiff consistently ranked near the bottom of all the regional managers (Semelsberger aff. ¶ 5, ex. 1). Mr. Semelsberger further testified that another black regional manager, James Fearson, improved the performance of his region over the same period of time that the plaintiff's region remained stagnant. Mr. Fearson ranked higher than the plaintiff in ten of the eleven months they were both regional managers under Mr. Bennett, and in three months Mr. Fearson was in the top half of all regional managers. Mr. Fearson remains a regional manager with the defendant (Semelsberger aff. ¶ 6). Mr. Semelsberger further testified that by April 2004 the plaintiff's replacement, Mr. Deal, was able to achieve a performance ranking significantly higher than the plaintiff ever achieved (Semelsberger aff. ¶ 7, ex. 1). While the plaintiff argues in his brief in opposition to summary judgment that Mr. Deal's performance was worse than his (pl. resp. m.s.j. 2, 3), he has offered no evidence in support of that argument.

The plaintiff also argues that two white regional managers under the supervision of Mr. Bennett were placed on action plans to improve their performances, whereas he was never offered that opportunity. However, the plaintiff could not offer any evidence about the reasons for each action plan, what the plans required, how the regions compared to his, or other details that the white regional managers were similarly situated to him (pl. dep. 66-71). The plaintiff also named several white regional managers who allegedly had performance problems but kept their jobs. The plaintiff noted that these employees had personal friendships with upper management (pl. dep. 73-76). When asked why the defendant did not terminate one of these employees from employment, the plaintiff stated that the person was "a friend of the executive vice president . . . . They go play golf together" (pl. dep. 76). As argued by the defendant, allegations that white regional managers were treated more favorably than the plaintiff because of their friendships with members of management is not probative of discrimination.

Based upon the foregoing, the plaintiff cannot show that the defendant's decision to demote him was pretext for racial discrimination. Accordingly, the claims for disparate treatment under both Title VII and Section 1981 should be dismissed.

In his complaint, the plaintiff also alleges disparate impact discrimination (comp. ¶¶ 41-45). To establish a *prima facie* case of disparate impact discrimination, a plaintiff must show that a facially neutral employment policy or practice has a significantly discriminatory impact. *Watson v. Fort Worth Bank and Trust*, 487 U.S. 977, 986-87 (1988). The defendant argues that the plaintiff has failed to point to any specific policy or practice of the defendant that he alleges is discriminatory. "Once the employment practice at issue has been identified, causation must be proved; that is, the plaintiff must offer statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group." *Id.* at 994. The defendant argues that even assuming that specific policies were identified, the plaintiff has failed to offer statistical evidence to support his claims. In his response to the motion for summary judgment, the plaintiff does not respond to these arguments and offers no evidence supporting this claim. Based upon the foregoing, the disparate impact claim fails.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, it is recommended that the defendant's motion for summary judgment be granted.

s/William M. Catoe
United States Magistrate Judge

August 3, 2006

Greenville, South Carolina